MANCHESTER LOCOMOTIVE WORKS, Petitioner, *vs.* WILLIAM H. TRUESDALE, Receiver, and others.

July 18, 1890.

Conditional Sale of Locomotive to Railway Company—Delivery— Waiver of Condition.—The petitioner sold to a railroad company a locomotive, upon the condition that it should be paid for on delivery. It was delivered, but was not paid for. The vendor, without asserting its right to repossess itself of the locomotive, sued to recover the price, and by garnishment and judgment secured partial satisfaction. *Held,* that the delivery, in the first instance conditional, became absolute by the conduct of the vendor, so that the latter had no reserved lien upon the locomotive.

Same—Subsequent Appointment of Receiver—Claim of Seller Postponed to those of Bondholders.—More than six months after the sale the road was placed in the hands of a receiver at the suit of the holders of mortgage bonds to foreclose their mortgages, given long before the sale, and covering all the property of the railroad company, present and prospective, including its earnings. Nearly a year after the appointment of the receiver the vendor applied to the court for an order requiring the

payment of the balance of its debt out of the earnings of the receivership. *Held,* that the debt was more properly to be classed with the general debts of the corporation than with those incurred for current expenses proximately connected with the operation of the road by the receiver, and hence that the court properly refused to allow this claim as one equitably entitled to preference over the claims of the bondholders secured by mortgage (antedating the sale of the locomotive) upon the earnings of the road.

Appeal by petitioner from an order of the district court for Hennepin county, *Young,* J., presiding, refusing to direct the receiver of the Minneapolis & St. Louis Railway to pay petitioner for a locomotive sold the company.

*Flannery & Cooke,* for appellant.

*Albert E. Clarke* and *J. M. Shaw,* for respondents.

Dickinson, J.   This is an appeal by the above-named petitioner, the Manchester Locomotive Works, from an order of the district court denying its application for an order directing the receiver of the Minneapolis & St. Louis Railway Company to pay a balance remaining unpaid of the purchase price of a locomotive sold by the locomotive works to the railway company on the 22d day of December, 1887. Although the price ($6,800) was to be paid on the delivery of the locomotive, it was not so paid, and in May, 1888, the petitioner commenced an action in the district court against the railway company for the recovery of the debt, and in that action garnished certain money belonging to the corporation in the hands of other persons. In that action the locomotive works recovered judgment in November, 1888, against the railway company, and secured satisfaction of a part of the same through the garnishee proceedings. While that action was pending, and on the 28th of June, 1888, a little more than six months after the sale and delivery of the locomotive, the respondent Truesdale was appointed receiver of the railway company, the corporation being insolvent, in an action in the district court to foreclose certain trust-deeds or mortgages which had been given by the railway company long before the sale of the locomotive, to secure its bonded indebtedness of more than $9,000,000. These mortgages in terms covered all the property of the railway company, including all locomotives then held or which should thereafter be acquired, and

the tolls, issues, and profits of the road. This locomotive is a part of the equipment of the railroad, and was delivered to the receiver as such. The funds garnished by the locomotive works consisted of moneys earned by the railway company subsequent to the giving of the mortgages. Since the purchase of the locomotive, and prior to the appointment of the receiver, the railway company used more than $60,000 of its earnings in the payment of interest on its mortgage bonds, and more than $25,000 in construction and permanent improvements. The earnings of the road since the receiver took possession, and now in his hands, are more than sufficient to pay the claim of this petitioner, and all others due for supplies, equipment, and labor furnished or done for the railway company. Our statute (Gen. St. 1878, *c.* 34, §§ 72, 73) authorizes mortgages by railway companies covering after-acquired property, both real and personal, and there would seem to be no doubt that, in the absence of any conflicting and superior equity, the mortgagees are entitled to have the net earnings of the road in the hands of the receiver, after the payment of the current operating expenses, applied on their mortgage debt. The claim of the petitioner was a simple, unsecured debt of the railroad company, upon which judgment has been now recovered. The petitioner, as a creditor, had no lien upon the property, franchises, or earnings of the railroad corporation, and whatever lien it has now by virtue of its judgment is subject to the prior lien of the mortgagees. The sale of the locomotive does not appear to have been made with a reservation of title in the vendor after delivery, and until the purchase price should be paid. The contract being that payment should be made at the time of the delivery, the petitioner might have taken back the property when, upon the delivery, the railroad company neglected or refused to make payment; the delivery in such case being subject to the condition of payment being made, and not absolute, so as to transfer the title, unless the vendor should waive that condition, and make the delivery absolute. *Fishback* v. *Van Dusen*, 33 Minn. 111, (22 N. W. Rep. 244.) But the vendor could not allow the property to remain in the possession and use of the vendee as a purchaser, and proceed as it did to enforce payment of the debt by the ordinary legal remedies, without being deemed

to have elected to treat the delivery as absolute, and itself as a creditor of the vendee as to the contract price.   The title then passed absolutely to the railroad company, and the property became at once subject to the lien of the already existing mortgages.   *Galveston R. Co.* v. *Cowdrey*, 11 Wall. 459.   Of course the vendor was entitled to payment, and might, as it did, pursue the proper legal remedies to secure payment.   But in this proceeding it seeks to have the express lien of the mortgage,. as respects the earnings of the receivership, postponed to what is asserted to be a prior equity arising from the fact that the property sold became a part of the equipment of the road, and ought to have been paid for out of the earnings of the road, and from the fact that such earnings have been, to the amount of $60,000, paid to satisfy interest on the mortgage bonds, while this debt remained unpaid.   The doctrine of *Fosdick* v. *Schall*, 99 U. S.. 235, and of other decisions of like tenor, are relied upon in support. of this application.   In connection with what may be deemed the leading case of *Fosdick* v. *Schall*, the following cases may be referred to as bearing upon the subject under consideration: *Douglass* v. *Cline*, 12 Bush, 608; *Williamson* v. *Washington, etc., R. Co.*, 33 Grat. 624; *Addison* v. *Lewis*, 75 Va. 701; *Poland* v. *Lamoille Valley. R. Co.*, 52 Vt. 144; *Hale* v. *Frost*, 99 U. S. 389; *Huidekoper* v. *Locomotive Works*, Id. 258; *Miltenberger* v. *Logansport Ry. Co.*, 106 U. S. 286, (1 Sup. Ct. Rep. 140;) *Burnham* v. *Bowen*, 111 U. S. 776, (4 Sup. Ct. Rep. 675;) *Wood* v. *Guarantee. Trust, etc., Co.*, 128 U. S. 416, (9 Sup. Ct. Rep. 131;) *Porter* v. *Pittsburg Steel Co.*, 120 °U. S. 649, (7 Sup. Ct. Rep. 741;) *Turner* v. *Indianapolis,. etc., R. Co.*, 8 Biss. 315; *Thomas* v. *Peoria & Rock Island Ry. Co.*, 36 Fed. Rep. 808, and other cases cited.   But see, also, *Metropolitan Trust Co.* v. *Tonawanda, etc., R. Co.*, 103 N. Y. 245, (8 N. E. Rep. 488;) *Ellis* v. *Boston, Hartford & Erie R. Co.*, 107 Mass. 1.

Accepting what seems to be the now more generally declared doctrine in such cases, as illustrated in *Fosdick* v. *Schall*, it would not be easy to define a rule of general application which could be said to be in accordance with all the decisions which may be deemed to recognize the right of the court to require payment, out of the earnings of a receivership, of prior debts of the corporation, in preference

to the precedent mortgage lien.    Nor shall we here undertake to lay down any rule defining the precise extent and limitations of that doctrine.    It will be sufficient for our present purposes to say that no inflexible rule has been laid down ; that the matter is one in which necessarily the result must depend upon the peculiar circumstances of each case, and must be determined by the sound judicial discretion of the court, for upon this ground of discretion the doctrine largely rests; and that, whatever may be the precise extent or limitations of the doctrine, the court was justified by the circumstances of this case in refusing the order sought.    In this connection it is to be observed that the decisions which have established the right of the court to require the earnings of such a receivership to be applied in payment of debts incurred prior to the appointment of the receiver, in preference of the claims of the mortgagees at whose suit the receiver had been appointed, restrict that right to somewhat narrow limits.    It may be said to be confined to what may be deemed *operating expenses* of the railroad, including, to some extent or under some circumstances, necessary equipment and repairs, but excluding debts for original construction, and the demands of the general creditors of the corporation.    It is to be observed, too, that the length of time which may have elapsed after the incurring of the debt sought to be thus preferred, and before the appointment of the receiver, has been regarded as of importance, and in some jurisdictions a period of time has been adopted by judicial decisions, back of which, in general, the courts have refused to go in making such preferential allowances.    See *Thomas* v. *Peoria & Rock Island Ry. Co., supra,* and *Turner* v. *Indianapolis, etc., Ry. Co., supra.*    It was said by Harlan, J., in the former of these cases, that "it would not do to charge the income of mortgaged railroad property managed by a receiver, or the property itself, with every debt incurred in all its previous history, for labor, supplies, or equipment."    We refer to such limitations of time as showing that the courts have felt that such allowances should be narrowly restricted.    In *Miltenberger* v. *Logansport Ry. Co., supra,* it was said that the discretion to direct payment, out of the earnings of the receivership, of pre-existing debts, should be exercised with very great care; the payment of such debts standing

*prima facie* on a different basis from that of claims-arising under the receivership. The opinion in this case may be noted as making prominent the considerations of necessity, having regard to the public interests as well as the interests of the mortgagees, for allowing the payment of claims intimately related to the possession and operation of the road by the receiver; reasons not applicable to debts of long standing, even though they were incurred for labor or equipment.

In view of all the authorities, we are of the opinion that if, either from lapse of time or from other circumstances, the debt for equipment or labor sought to be preferred by order of the court, and to be paid out of the earnings of the receivership, is more properly to be classed with the general debts of the corporation than with those incurred for current expenses proximately connected with the possession and operation of the road by the receiver, it is at least a proper exercise of the discretion of the court to disallow the application. The application of that test to the circumstances of this case justifies the order appealed from. The petitioner's debt constituted no lien or charge upon any of the property of the corporation, while the funds sought to be appropriated were legally and equitably charged for the payment of the mortgage bonds and interest. The legal rights of the vendor of this locomotive were the same as those of any creditor. It resorted to the ordinary legal remedies to enforce payment of the debt; and after the appointment of the receiver the prosecution of its legal remedies was continued, and satisfaction of the greater part of its demand was thus secured. The sale was completed, absolutely and without condition, more than six months before the appointment of the receiver. It was about eleven months after that appointment, and seventeen months after the debt was incurred, before this application was made. The debt was no more closely related to the operation of the road by the receiver than any debt that might have been incurred for the ordinary permanent equipment of the road at any time past, where the property, with other property of the road covered by the lien of the mortgage, had passed into the hands of the receiver. There was no greater necessity or reason, from considerations affecting either the public interest, the interest of the mortgagees, or the rights of the creditor, for preferring this

debt to the specific lien of the mortgagees, than there would be in thus preferring any debt incurred at any past time for the permanent equipment of the road; and yet it is certain, under the authorities, that all debts of that kind are not to be allowed to thus displace the mortgage security. Our conclusion is that the court was justified in treating this debt as a general debt of the corporation, and not entitled to preference.

Order affirmed.