Syllabus.

## Richmond.

MURRAY v. FARMVILLE & POWHATAN RAILROAD CO.

March 12, 1903.

1. DEEDS—*After Acquired Property—Apt Words of Conveyance—Case in Judgment—General Words Followed by More Particular.*—If it be conceded that a railroad company can purchase the road of another company, and that property to be acquired in the future can be conveyed, still it is necessary to show by the conveyances that it was the intention of the grantor to convey such property, and that apt words were used to effectuate that purpose. In the case in judgment, the resolution of the Board of Directors of a railroad company under which a mortgage was executed, and also the form of the bonds to be secured, were copied into the mortgage. The resolution directed that the mortgage should cover certain enumerated property, and "all other property of every description now owned or that may hereafter be acquired by" the company, except certain donations and subscriptions. The form of the bond recited that it was secured by a mortgage on certain enumerated property of the company and "also all other property of every description now owned, or that may be hereafter acquired by it . . . as in said mortgage or deed of trust specified." The granting clause of the deed conveyed certain enumerated property, and also all other "property of any kind or description not hereinbefore enumerated, now possessed or that may be hereafter acquired by the said party of the first part, connected with, or issuing from, or relating to the said railroad, or the construction, maintenance, use, and enjoyment of the same." The railroad company subsequently purchased another railroad, and gave a second mortgage on all of its property to secure the bonds given in part payment for the purchase price of the road so bought, no lien being reserved nor other security taken for the purchase money.

*Held:* The road so purchased was not connected with, and did not issue from, nor relate to, the first road, or its construction, maintenance, use, and enjoyment, and hence did not pass under the first

mortgage. The words used in the granting clause of the deed restricted the more general words used therein, and in the recital of the resolution of the Board of Directors and the form of the bond, and the evidence does not disclose any words or acts of commission or omission which would estop the second mortgage bondholders from asserting their lien in preference to the first mortgage. All of the second mortgage bondholders stand on the same footing. No preference is to be given to bonds representing the purchase price of the road so purchased; all being secured in the same class.

2. DEEDS—*After Acquired Property—Effect at Common Law—In Equity.*— At common law, a valid mortgage could not be made to cover after acquired property, but the rule is otherwise in equity where the conveyance operates as a contract to take effect and attach as soon as the property comes into being.

3. DEEDS—*After Acquired Property—Rule of Construction as to Corporations.*—The same principles of construction apply to a mortgage upon future acquisitions of property by a corporation that apply to a like instrument executed by a private person.

Appeal from a decree of the Law and Equity Court of the city of Richmond, pronounced December 19, 1901, in a suit in chancery therein pending under the style of *Ginter's Ex'ors and Others* v. *Farmville & Powhatan Railroad Company and Others,* wherein appellant was one of the defendants.

*Reversed.*

The opinion states the case.

*Lewis & Cary* and *Wyndham R. Meredith,* for the appellant.

*Meredith & Cocke; C. S. Stringfellow; Munford, Hunton, Williams & Anderson; Christian & Christian; Williams, Bryan & Williams,* and *Willis B. Smith,* for the appellees.

KEITH, P., delivered the opinion of the court.

The Farmville & Powhatan Railway Company, on the 1st day of May, 1888, created a first mortgage upon its property securing a series of bonds therein named. There is copied into this deed the preamble and resolutions adopted by the directors

of the Farmville Road on the 21st of April, 1888, which author-
ized the execution of the mortgage. It was resolved, among
other things, that the "mortgage shall be in such form, and
contain such provisions, as shall be adopted by the Board of
Directors, and shall cover the entire line of road to be con-
structed, together with all the works, franchises and income of
the company, now owned or hereafter to be acquired by it;
and also (subject only to the equipment mortgage, which shall
be a lien on equipment only, made to secure to lessors or ven-
dors unpaid rentals and purchase money for leased or pur-
chased equipment), all rolling stock and equipment now be-
longing to, or hereafter acquired by the party of the first part,
and also all other property of every description now owned, or
that may hereafter be acquired by, it, except donations or sub-
scriptions from counties, towns or cities—and subscriptions by
any parties to its capital stock now made or voted, or hereafter
to be made or voted."

The form of the bond to be issued and secured is set out on
the face of this mortgage, and it provides "that this bond is
one of a series of bonds, each of like tenor, date, and amount,
issued by the obligor, and secured by a first mortgage or deed of
trust bearing even date herewith . . . conveying all the
railroad of said obligor now or hereafter to be constructed, and
the franchises, incomes, earnings and profits; . . . and
also all other property of every description now owned, or
that may be hereafter acquired, by it . . . as in said mort-
gage or deed of trust specified." . . .

The granting clause of the deed is as follows: "And in fur-
ther consideration of the premises, and of one dollar in hand
paid by the party of the second part to the party of the first
part, the receipt of which is hereby acknowledged, and, in order
to secure the payment of the principal and interest of the
bonds issued hereunder, according to the tenor and effect
thereof, without preference or priority by reason of the time

of issue, the party of the first part hath granted, bargained, sold, transferred, assigned and conveyed, and hereby doth grant, bargain, sell, transfer, assign and convey unto the said party of the second part and its successor or successors in trust hereby created, and its and their assigns, all the railroad of the party of the first part now or hereafter to be constructed, including the proposed extension of the same from Farmville to Brook Neal, whenever the construction of the same shall be entered upon; and likewise all branch roads which may hereafter be constructed by the said party of the first part, and any and all real estate within the State of Virginia now owned, or hereafter acquired, by the said party of the first part for the purposes of the railroad aforesaid, including the right of way, road-bed of said railroad, and the superstructure and tracks placed thereon, and all stations, depots, warehouses, machine shops, car and engine-houses, and other grounds and buildings used, or to be used, in connection therewith; also all rails, switches, fastenings, bridges, fences, water-tanks, turn-tables, culverts, wharves, viaducts, and all other structures, buildings, and fixtures whatever, acquired, or hereafter to be acquired, for the use of the party of the first part, or the business thereof; or for the construction, maintenance, or operation of said line of railroad conveyed hereby, and also all stationary engines, machinery, tools, implements, and material and supplies of every kind now owned by the said party of the first part, or that may hereafter be acquired by it for constructing, maintaining, operating, improving or repairing the said railroad, or any of its appurtenances; and also, subject only to an equipment mortgage, which shall be a lien on equipment only, made, or hereafter to be made, to secure to lessors or vendors unpaid rentals or purchase money for leased or purchased equipment, all locomotives, tenders, cars, and all other rolling stock and equipment now belonging to, or which may hereafter be acquired by, the said party of the first part for operating said

railroad; and also all and singular the corporate rights, privileges and franchises, incomes, earnings, profits, and property of any kind or description not hereinbefore enumerated, now possessed, or that may hereafter be acquired, by the said party of the first part, connected with or issuing from or relating to the said railroad, or the construction, maintenance, use and enjoyment of the same, except donations from counties, towns and cities, and subscriptions by parties to its capital stock now made, or voted, or hereafter to be made or voted."

This mortgage was executed in order to raise money to build and equip the road from Moseley's Crossing, a point on the Richmond and Danville Railroad, to Farmville, and thence, as soon as their resources permitted, to Brook Neal, in the county of Campbell. There was in existence at the time a railroad from Jennings' Crossing, in the county of Chesterfield, to deep water at Bermuda Hundred. From Jennings' Crossing to Moseley's Crossing there was a gap of about eight miles.

On the 26th day of March, 1899, James H. Young, as trustee and agent representing the holders of all the bonds issued by the Brighthope Railway Company under two mortgages theretofore created by it, entered into an agreement with Henry L. Young as trustee in the first and Richard Irvin trustee in the second of said mortgages, which recites that it is for the interest of the Brighthope Railway Co., its stockholders and bondholders that the property of the said company should be sold and its railroad operated as a part of the line of the Farmville & Powhatan Railroad, and that the Farmville Company is desirous of purchasing the Brighthope Company's road; therefore, in order to carry out this object, James H. Young, on behalf of all the holder of bonds secured by the first and second mortgages of the Brighthope Company, requests Henry L. Young, the trustee under the first mortgage, to exercise the power of sale contained therein, and agrees to indemnify and save harmless the said trustee for all acts done in pursuance of

such agreement. This sale was consummated. All the bonds secured by the first and second mortgages of the Brighthope Railway Company were surrendered and cancelled, the consideration which passed from the Farmville Company being $179,600 of its common stock, $167,000 of its preferred stock, and "$200,000 second mortgage six *per cent.* income bonds of the Farmville Company, together with a second mortgage or deed of trust, the draft of which second mortgage is annexed to this agreement, properly executed, securing the said second mortgage bonds, covering the whole road now belonging to the Farmville Company and the Brighthope Railroad, as well as the extension of the said Farmville Company's road from Farmville to Brook Neal, in the county of Campbell, Virginia, whenever the construction of the same shall be entered upon."

In execution of this agreement the Brighthope Company made an absolute conveyance of all its property, rights, and franchises to the Farmville & Powhatan Company, and the Farmville & Powhatan Company in turn executed its second mortgage in accordance with the terms of this agreement, and delivered the bonds and stocks.

In a suit brought to ascertain the liens binding upon the Farmville Company, it was held that, upon the acquisition by it of the Brighthope Railroad, the latter passed under the first mortgage of the Farmville Company as after acquired property, and the bondholders secured under that first mortgage have a lien upon the entire road of the Farmville Company, including the Brighthope road, superior to the lien of the bonds secured by the second mortgage. The correctness of this decision is the only subject of controversy in the case before us.

The contention of the appellant is that the holders of the $200,000 of the bonds of the Farmville & Powhatan Company issued under the agreement, by which it became the purchaser of the Brighthope road, and which are secured by its second mortgage, have a first lien upon the road from Jennings' Cross-

ing to Bermuda Hundred. It is claimed, indeed, that the $200,-
000 of the bonds which represent a part of the purchase price
for the Brighthope road should stand on a better footing than
other bonds of the same series secured by the second mortgage,
but this contention, we think, cannot be maintained. The deed
from the Brighthope Company to the Farmville Company is
absolute. There is no reservation of a vendor's lien to secure
the purchase money. The first and second mortgages which
had theretofore rested upon the Brighthope railroad were fully
executed by the trustees, the bonds secured by them were sur-
rendered and cancelled, and, by the deed of Henry L. Young,
the property free from encumbrance passed from the Bright-
hope Railway Company and vested in the Farmville and Pow-
hatan Railway Company. The holders of the $200,000 of bonds
have no footing except by virtue of the lien given for their se-
curity, which is now the second mortgage of the Farmville and
Powhatan Railway Company, and they must share its benefits
ratably with all who are secured by it.

· It was contended that the Farmville and Powhatan Railway
Company had no power to acquire the Brighthope Railroad
at the date of its first mortgage; that the capacity of one rail-
way company to acquire the property and franchises of another
railway must be expressly conferred by the General Assembly;
that the legislative authority relied upon in this case only
authorized the acquisition of connecting roads, and that there
was an unoccupied interval between Moseley's Crossing and
Jennings' Crossing, but we do not find it necessary to decide
these contentions. Were it conceded that the one road had the
right to sell and the other to acquire; were all conceded that is
claimed with respect to the power to mortgage after acquired
property, it would still be necessary to show by the deeds
vouched in this record that it was the intention upon the part
of the Farmville & Powhatan Company to convey the Bright-
hope railroad as after acquired property, and that apt and

proper words were used in the instrument creating the mort-
gage to effectuate that purpose; it would still be necessary to
show that the terms of the mortgage executed by the Farm-
ville and Powhatan Company on the 1st of May, 1888, were
sufficient to cover the Brighthope Railway as after acquired
property, so that upon its subsequent acquisition it would vest
in the trustee under that mortgage.

The Virginia decisions shed but little light upon the subject
under investigation. In *Gibert* v. *W. C., V. M. & G. R. Co.*,
33 Gratt., at page 608, the court construing the first mortgage
of the Alexandria and Manassas Road, held that it did not pass
as after acquired property under the mortgages created by the
Orange and Alexandria Road. The decision was doubtless
correct, but the facts were altogether different from those in
the case before us, and we advert to it only because it was re-
lied upon on the one hand, and much criticised upon the other
during the argument of this case; and to observe further that
in the light of more recent decisions by eminent courts, the
enumeration there given of what may pass as after acquired
property may perhaps be deemed incomplete.

At common law a valid mortgage could not be made to cover
after acquired property, but it is otherwise in equity for the
reason that what is in form a conveyance operates in equity by
way of present contract merely, to take effect and attach as
soon as the property comes into being.

The same principles of construction apply to a mortgage
upon future acquisitions of property by a corporation that
would apply to a like instrument executed by an individual.
*Manchester Loco. Wks.* v. *Truesdale* (Minn.), 46 N. W. 301, 9
L. R. A. 140; *Pennock* v. *Coe*, 23 How. 117, 16 L. Ed. 436.

In the latter case it is held that "Whenever a party under-
takes by deed or mortgage to grant property, real or personal,
*in presenti*, which does not belong to him, or has no existence,

the deed or mortgage, as the case may be, is inoperative and void, and this either in a court of law or equity.

"But the principle has no application to a case where the mortgagee does not undertake to grant, *in presenti*, property of the company belonging to it, or not in existence at the date of the mortgage.

"Where the terms of the grant or conveyance are: 'All present and future to-be-acquired property of the parties' . . ., the law will permit the grant or conveyance to take effect upon the property when it is brought into existence, and belongs to the grantor, in fulfillment of an express agreement, founded on a good and valuable consideration"; and the mortgage attaches to the future acquisitions, as described in it, from the time they come into existence.

In *Central Trust Co.* v. *Kneeland*, 138 U. S. 414, 34 L. Ed. 1014, it was held that the mortgage executed by a railroad company upon its present and after acquired property covers not only the property then owned by the railroad, but becomes a lien upon all property subsequently acquired by it which comes within the description in the mortgage, and the railroad company acquires either the legal or equitable title.

In the case before us, there is nothing either in general terms or by particular description which can be held to include the Brighthope Railroad as after acquired property in the contemplation of the parties to the deed of May 1, 1888. It is true that one of the resolutions of the directors under which this deed was executed and which are copied into it, recites that the deed is to convey "all other property of every description now owned, or that may hereafter be acquired, by it, except donations or subscriptions from counties, towns and cities, and subscriptions by any parties to its capital stock now made or voted, or hereafter to be made or voted." But the departure in the granting clause of the deed from the terms of this resolution only accentuates the effect of the language

used in that clause. After describing in detail the property then owned and conveyed, it continues: "And also all and singular the corporate rights, privileges and franchises, incomes, earnings, profits, and property of any kind or description not hereinbefore enumerated, now possessed, or that may hereafter be acquired, by the party of the first part, connected with, or issuing from, or relating to the said railroad, or the construction, maintenance, use and enjoyment of the same, except donations from counties, towns and cities, and subscriptions by parties to its capital stock now made or voted, or hereafter to be made or voted."

It is plain that the Brighthope Railroad was not connected with, or issuing from, or relating to, the Farmville Railroad, or the construction, maintenance, use and enjoyment of the same. It had no physical connection with it. It was not acquired for sixteen months thereafter. The Farmville and Powhatan Road itself had not been constructed. The grant, it is true, was broad and comprehensive. It carried with it all the property of every kind then owned by the Farmville Company. If it had stopped with the words, "or that may hereafter be acquired by the party of the first part," everything would have passed then owned or thereafter acquired, which it was capable of acquiring and passing, but the language which follows could only have been used in order to qualify and limit the antecedent general terms. They are in the deed, and we must, if it can be done, give them their natural and proper force and effect, and it seems plain that they can serve no other purpose than to limit and confine the general terms which precede them.

It is said that the second mortgage referring to the first mortgage is to be construed in subordination to it. That is true, but the rights of the mortgagees under the second mortgage are only subject to a just and proper construction of the first mortgage, and while it is true that the form of the bond under the first mortgage is made a part of it, and declares upon its face

that the company has conveyed all the property it then owned, "and also all other property of every description now owned, or that may hereafter. be acquired, by it," the holders of the bonds are expressly referred to the granting clause of the deed to ascertain their rights which are declared to be "as in said mortgage or deed of trust specified."

In *Smith* v. *McCullough*, 104 U. S. 25, 26 L. Ed. 637, a railroad company executed a mortgage on "all its present and after-to-be-acquired property, that is to say," and then enumerates its road, right of way and other property. Held, that county bonds belonging to the company, not enumerated in the mortgage, are not embraced in, and do not pass by, it. The rights, privileges and franchises mortgaged were only such as had direct connection with the management and operation of the road after it was constructed, and put in use as a public high-way.

It was earnestly contended in that case that the phrase in the mortgage "after acquired property" was sufficiently comprehensive to embrace property of every description, but the court held that the subsequent phrase, "that is to say," followed by a detailed description of the different kinds of property embraced by the general words quoted, indicate that the mortgage was not intended to include every conceivable possession and right belonging to the company, but only the road and its adjuncts and appurtenances.

We are of opinion that the mortgage of May 1, 1888, did not pass the Brighthope Railway under the after-acquired property clause.

We are further of opinion that the holders of bonds secured by the second mortgage are not estopped from asserting their rights under it. We see nothing which they have done or said or omitted to say or do by which the holders of the first mortgage bonds have been prejudiced or induced to do or to refrain from doing what they otherwise might have done for the

protection of their rights.    We can find no evidence that any holder of the first mortgage bonds was induced to become its owner by reason of anything done or omitted by the holders of the second mortgage bonds, or any one interested under that mortgage.

Upon the whole case, we are of opinion that the decree of the Law and Equity Court of the city of Richmond must be reversed, and the cause remanded for further proceedings to be had therein not inconsistent with this opinion.

*Reversed.*