STATE BANK OF DELANO,
Respondent,

v.

CENTERPOINT ENERGY RE-
SOURCES CORP. d/b/a Center-
Point Energy, Appellant,

Kensington Equity Partners,
Inc., Respondent,

Swartz Brothers Associates, Inc., as Re-
ceiver of Real Estate of Kensington
Equity Partners, Inc. in Starbuck,
Minnesota, Respondent,

Glacial Hills Elementary
School, Respondent.

No. A09–962.

Court of Appeals of Minnesota.

March 23, 2010.

Bradley A. Kletscher, Tammy J. Schemmel, Barna, Guzy & Steffen, Ltd., Minneapolis, MN, for respondent State Bank of Delano.

Keith S. Moheban, James T. Brand, Leonard, Street and Deinard Professional Association, Minneapolis, MN, for appellant.

Kensington Equity Partners, Inc., Burnsville, MN, respondent.

Neil T. Nelson, Obenland & Roth, Glenwood, MN, for respondent Swartz Brothers Associates, Inc., as Receiver for real estate in Starbuck, Minnesota.

David C. McLaughlin, Fluegel, Helseth, McLaughlin, Anderson & Brutlag, Chtd., Ortonville, MN, for respondent Glacial Hills Elementary School.

Considered and decided by LANSING, Presiding Judge; HALBROOKS, Judge; and SCHELLHAS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant CenterPoint Energy (CenterPoint) challenges the district court's grant of summary judgment to respondent State Bank of Delano (State Bank) and respondent Swartz Brothers Associates, Inc. (Swartz), arguing that the district court erred by determining that Swartz is not required to pay the utility debts incurred by respondent Kensington Equity Partners, Inc. (Kensington) before Swartz's appointment as the receiver of property that Kensington formerly owned and operated.

Because we conclude that the district court did not err in its legal conclusion that Swartz is not required to pay the past utility debts of Kensington, we affirm.

## FACTS

On December 27, 2005, Kensington executed a mortgage, promissory note, and assignment of rents to State Bank for property located at 610 West 6th Street in Starbuck. When Kensington defaulted on its mortgage payments, State Bank began foreclosure proceedings and moved the district court under Minn.Stat. § 576.01, subd. 2, for the appointment of a receiver to manage the property during foreclosure. In December 2007, the district court appointed Swartz as the receiver and ordered the Pope County sheriff to sell the property. On February 26, 2008, the property was sold to State Bank in a sheriff's sale.

The district court's order appointing Swartz provides that Swartz "shall collect the rents, profits and all other income of any kind from the Property, [and] shall do all things necessary to manage the Property so as to prevent waste." The order also gives Swartz the power "to negotiate, extend, terminate, modify, renegotiate or enter into contracts, including, without limitation, contracts to provide security, janitorial, leasing, utility and other services to the Property," and "to pay prior obligations incurred by [Kensington] or others responsible for the Property *only if deemed necessary for the continued operation of the Property and its improvements.*" (Emphasis added.)

After Swartz took possession of the property in January 2008, it contacted CenterPoint to request meter readings and a change in the account name to "Kensington Receiver Account." In March 2008, CenterPoint sent Swartz invoices for the property's meters and advised Swartz that it was responsible for Kensington's 2007 delinquent utility account balance of $23,636.98. Swartz used funds from the receivership's bank account to pay the property's utility expenses for January and February 2008, but disputed its obligation to pay Kensington's debts from 2007. In response, CenterPoint sent two notices to Swartz, warning that the natural-gas service for the property would be disconnected if Swartz did not pay the outstanding balance.

State Bank subsequently sought a declaratory judgment that neither it nor Swartz was required to pay Kensington's utility debts and that CenterPoint could not disconnect the natural-gas service to the property. CenterPoint cross-claimed against Kensington and Swartz for breach of contract and unjust enrichment.

CenterPoint moved for summary judgment, arguing that because Swartz "stepped into the shoes" of Kensington, it assumed Kensington's utility debts. State Bank also moved for summary judgment on the ground that Swartz, as the receiver for the property, had no obligation to pay the debts of Kensington, a corporation still in existence.

The district court granted State Bank's summary-judgment motion, holding that Swartz did not "stand in the shoes" of Kensington. The district court stated that "the natural gas bill is the obligation of Kensington alone, [and] this unpaid bill is not necessary for the propert[y's] continued operation." Following the order, Swartz also moved for summary judgment on the same grounds asserted by State Bank. The district court granted summary judgment in favor of Swartz based on the analysis. Following the district court's entry of judgment in favor of State Bank and Swartz, CenterPoint secured a default judgment against Kensington for the full

amount of the past-due utility debt. This appeal follows.

## ISSUES

Did the district court err by granting State Bank's and Swartz's motions for summary judgment?

A. Is a receiver appointed pursuant to Minn.Stat. § 576.01, subd. 2, required to pay a mortgagor's pre-existing utility debt?

B. Does the district court's order appointing Swartz as the receiver require Swartz to pay Kensington's utility debt?

## ANALYSIS

CenterPoint argues that the district court erred by granting State Bank's and Swartz's motions for summary judgment. "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). Because both parties agree that this appeal raises no genuine issues of material fact, we review de novo the question of whether the district court erred in its application of law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 77 (Minn.2002).

**A. Is a receiver appointed pursuant to Minn.Stat. § 576.01, subd. 2, required to pay a mortgagor's pre-existing utility debt?**

 The district court held that because Swartz was appointed as the receiver for the property and not as the receiver for Kensington, the corporation, Swartz is not required to pay Kensington's utility debt. The district court's order focuses primarily on common-law receivership principles, which have been used over the years by courts of many states. While we agree with the district court's resolution of the issue and appreciate its well-articulated analysis, we conclude that the Minnesota receivership statute embodies many of the common-law principles relied on by the district court and base our analysis accordingly. "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). Pursuant to statute, a receiver shall be appointed "with the commencement of an action to foreclose a mortgage . . . and during the period of redemption, if the mortgage being foreclosed secured an original principal amount of $100,000 or more." Minn.Stat. § 576.01, subd. 2.[1]

The statute provides that a receiver appointed for a mortgaged premises has authority to

> [c]ollect the rents, profits and all other income of any kind, manage the mortgaged premises so to prevent waste, execute leases within or beyond the period of the receivership if approved by the court, pay the expenses listed in clauses (1), (2), and (3) in the priority as numbered, pay all expenses for normal maintenance of the mortgaged premises and perform the terms of any assignment of rents.

---

1. A mortgage-foreclosure receivership is statutorily distinguished from other receiverships. Minn.Stat. § 576.01, subd. 1 (2008), gives the district court discretion to appoint a receiver to preserve property pending appeal, when a corporation is dissolved or insolvent, or "in such other cases as are now provided by law." A receiver appointed under subdivision 1 is not statutorily limited to paying certain expenses.

*Id.* The language of the statute is clear and unambiguous. A receiver is only required to pay normal maintenance expenses, tenant security deposits, prior or current real estate taxes or special assessments, and insurance premiums. *Id.,* subd. 2(1)–(3). It is undisputed that Kensington's past-due utility debt does not fall within the three specifically delineated statutory expenses. Therefore, we must determine whether Kensington is required to pay the past-due utility bill as an "expense[ ] for normal maintenance of the mortgaged premises." *See id.*[2]

CenterPoint argues that payment of the past-due utility bill is necessary for the normal maintenance of the property because the natural-gas service is subject to being disconnected as a result of Kensington's failure to keep its account balance current. To maintain a utility service, a customer must pay for the service or face disconnection. Minn. R. 7820.1000(A) (2007). But a utility may not disconnect service for "delinquency in payment for services rendered to a previous customer who occupied the premises unless the customer continues to occupy the premises." Minn. R. 7820.1300(A); *see Cascade Motor Hotel Inc. v. City of Duluth,* 348 N.W.2d 84, 85 (Minn.1984) ("[L]iability for the debt of another cannot be imposed in the absence of special agreement or statutory authorization for a lien on the property."). A "customer" is defined as "any person, firm, association or corporation ... being supplied with service by a utility." Minn. R. 7820.0700, subp. 1 (2007).

The district court determined that Swartz was a new customer of CenterPoint; we agree. When Swartz took possession of the property, it, not Kensington, began receiving natural-gas services from CenterPoint. As a separate entity from Kensington, Swartz is a new customer for purposes of the rule. Further, our case law recognizes that "[i]n the absence of a lien, or contract, a rule, regulation or charter provision is unreasonable and void when it seeks to impose an obligation to pay for utility services onto someone other than the one who actually incurred the debt." *Cascade Motor Hotel,* 348 N.W.2d at 85 (quotation omitted). It is undisputed that Kensington incurred this utility debt before Swartz's appointment as receiver, and absent a contract or rule to require assumption of the debt, there is no authority to hold Swartz accountable for it.

CenterPoint contends that even if Swartz is a new customer of CenterPoint, Kensington continued to occupy the property during the receivership. Under this reasoning, Swartz is required to pay Kensington's delinquent account balance or face disconnection. *See* Minn. R. 7820.1300(A). The plain meaning of "occupancy" is "[t]he act, state, or condition of holding, possessing, or residing in or on something; actual possession, residence, or tenancy." *Black's Law Dictionary* 1184 (9th ed. 2009). An "occupant" is "[o]ne who has possessory rights in, or control over, certain property or premises" or "[o]ne who acquires title by occupancy." *Id.*

**2.** CenterPoint relies on the case of *Manchester Locomotive Works v. Truesdale,* 44 Minn. 115, 46 N.W. 301 (1890), arguing that its holding requires a receiver to pay operating expenses that were incurred prior to the receiver's appointment. But the supreme court in *Truesdale* was confronted with an issue regarding a receiver appointed for the benefit of an entire corporation, as opposed to a mortgage receivership. 44 Minn. at 116, 46 N.W. at 302. Because the legislature later amended the receivership statute to require only certain expenditures for receivers appointed for a mortgaged premises, 1977 Minn. Laws ch. 202, § 1, at 324–26, we conclude that *Truesdale* is not controlling when a receiver is appointed pursuant to Minn.Stat. § 576.01, subd. 2.

The district court's order appointing Swartz provides that Swartz is required to "enter upon and take charge, possession, and control of the Property," is empowered to exclude Kensington from the property, has the power to manage and operate the property, and in all respects take over the entire property from Kensington. The terms of the order require Swartz to inform Kensington's tenants that "all decisions relating to the management of the Property" would thereafter be made by Swartz and no other party. Nothing in the record demonstrates that Kensington continued to occupy the property after Swartz took possession or that Kensington had any continued right of control over the property. While Kensington may have retained title and a right of redemption, it did not occupy the property as contemplated by Minn. R. 7820.1300(A).

For these reasons, we conclude that Swartz is not required by Minn.Stat. § 576.01, subd. 2, to pay Kensington's outstanding utility bills as an expense necessary for the maintenance of the property during the receivership. CenterPoint argues that this outcome conflates a receivership with a bankruptcy, essentially discharging Kensington's debts. But our plain reading of the receivership statute and the administrative rules does not result in such a consequence. CenterPoint is able to proceed against Kensington to obtain a judgment for its utility debt and has, in fact, done so. The appointment of a receiver in this case did not affect Kensington as a corporation in any respect; Swartz was appointed specifically for the purpose of managing the property. Therefore, the receivership statute and the rules do not require Swartz to make this payment.

Because Minn.Stat. § 576.01, subd. 2, requires a receiver to pay only for normal maintenance expenses of a property and

because the Minnesota rules do not permit CenterPoint to disconnect utility service to a new customer when the previous customer failed to pay its account balance, Swartz is not required to pay Kensington's utility debt. We therefore conclude that the district court appropriately granted summary judgment to State Bank and Swartz.

**B. Does the order appointing the receiver require Swartz to pay the utility debts of Kensington?**

Notwithstanding the statutory provisions, a district court's order may authorize a receiver to perform more duties than are required by Minn.Stat. § 576.01, subd. 2. *See Minn. Hotel Co. v. ROSA Dev. Co.*, 495 N.W.2d 888, 893 (Minn.App.1993) ("The [district] court has the discretion in receivership proceedings to do what is best for all concerned."). We must therefore determine whether the district court's order appointing Swartz requires Swartz to pay Kensington's utility debt. "A receiver's powers are defined by the orders of the court and include authority as may reasonably or necessarily be implied for such orders." *Hancock–Nelson Mercantile Co. v. Weisman*, 340 N.W.2d 866, 869 (Minn.App.1983); *see also Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 341 (Minn.App. 2009). CenterPoint relies on two clauses in the district court's order to support its argument that the order requires this payment: (1) Swartz has the power to "pay prior obligations incurred by [Kensington] or others responsible for the Property only if deemed necessary for the continued operation of the Property and its improvements" and (2) Swartz has the power to "negotiate, extend, terminate, modify, renegotiate or enter into contracts including, without limitation, contracts to provide security, janitorial, leasing, utility and other services to the Property and to pay for

those services as an expense of the Property."

With respect to Swartz's authority to pay Kensington's prior obligations, the district court's order expressly limits this power to those debts that are "necessary for the continued operation of the Property." Resolution of this issue turns on our previous determination that Swartz is a new customer of CenterPoint. And like the district court, we conclude that because "the natural gas bill is the obligation of Kensington alone, this unpaid bill is not necessary for the propert[y's] continued operation."

CenterPoint also contends that because Swartz has the power to extend, modify, or renegotiate contracts to provide utility service to the property, the order recognizes that Swartz steps into Kensington's shoes with respect to its contract with CenterPoint for natural gas. We disagree. This clause of the district court's order authorizes Swartz to contract on its own behalf for services related to the property. It does not shift the rights and corresponding obligations of Kensington's existing contracts to Swartz as the receiver. And even if this clause did authorize Swartz to assume Kensington's contracts, there is nothing in the record to indicate that Swartz exercised this authority with respect to Kensington's utility agreement with CenterPoint.

We are not persuaded by CenterPoint's comparison of Kensington's lease agreements to its utility contracts. CenterPoint asserts that Swartz steps into Kensington's shoes with respect to lease agreements and therefore it cannot "pick and choose" which of Kensington's contracts it assumes. Swartz is authorized to collect rental payments from the tenants of the property, but this money is placed into the receivership bank account to be used to pay the expenses listed in the statute and the district court's order. As the receiver, Swartz performs an intermediary function during the foreclosure of the property. If Swartz truly stepped into the shoes of Kensington with respect to its lease agreements, as argued by CenterPoint, Swartz would not be limited by a statute or an order in its use of the money collected. Because the district court's order does not require or permit Swartz to assume Kensington's role as a party to the various contracts associated with the property and because Swartz did not assume Kensington's contract with respect to CenterPoint's utility agreement, the district court's order does not require Swartz to pay Kensington's outstanding utility bills.

## DECISION

Because the Minnesota receivership statute requires a receiver to pay a mortgagor's debts only if specifically listed or if the debt constitutes a necessary maintenance expense and because paying Kensington's utility debt was not required to maintain natural-gas service at the property, Swartz is not required to pay CenterPoint for Kensington's past-due utility debt. And because the district court's order did not require Swartz to pay Kensington's utility debt to CenterPoint as a necessary expense or as a contractual obligation, the district court properly granted summary judgment to State Bank and Swartz.

**Affirmed.**