Brandon M. Schwartz, Michael D. Schwartz, Schwartz Law Firm, Oakdale, Minnesota (for appellant)
Terrance J. Wagener, Messerli & Kramer, Minneapolis, Minnesota (for respondents Neal Cohen, et al.)
Thomas E. McEllistrem, Sarah J. McEllistrem, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, Minnesota (for respondent Stevens Industries)
Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Smith, John, Judge.*
SCHELLHAS, Judge *833 Appellant challenges a grant of summary judgment to respondents based on the district court's rejection of appellant's argument that a receiver lacked the authority to pierce the corporate veil of a corporation in receivership. We affirm.
FACTS
Appellant Aaron Carlson Corporation (ACC) is an architectural woodworking company that provides custom woodwork for commercial and residential projects. LSI Corporation of America (LSI) manufactured and designed laminate-casework systems, and solid surface and other interior products. Respondents Neil Cohen, Darren Chaffee, and CoBe Capital, LLC (CoBe defendants) are shareholders or otherwise connected with LSI of America Holdings (LSI Holdings), which purchased LSI in June 2013. LSI contracted to purchase custom woodwork from ACC for one of its projects for a total price of $687,825. On June 12, 2015, LSI cancelled the contract with ACC. In July, ACC sued LSI for account stated and breach of contract (Hennepin County District Court 27-CV-15-16802) (contract action).
Meanwhile, Cohen and Chaffee entered into a loan agreement with LSI through which they acquired the right to request appointment of a receiver over LSI. In January 2016, Cohen and Chaffee commenced a lawsuit against LSI, alleging that LSI owed them collectively $5,044,797.54 and seeking appointment of a receiver over LSI (Hennepin County District Court 27-CV-16-646) (receivership action).[1] The district court granted a general receivership over LSI and appointed BGA Management as receiver. The court granted the receiver "all of the powers and all of the authority" under Minnesota law, including the powers to "[i]nvestigate, pursue, and compromise and settle any and all claims that [LSI], or the Receiver in its capacity as a Receiver over [LSI], may have against any third party, including [LSI]'s insiders, directors, officers and owners." Upon appointment, the receiver sent LSI's creditors, including ACC, a letter notifying them of the receivership.
On March 8, 2016, ACC filed an appearance in the receivership action, moved to intervene, moved to enjoin the liquidation of LSI, and asked the district court to void ab initio the receivership and any approved sales of LSI's assets, arguing that ACC had not received adequate notice. In a March 14 order, the district court stated that "ACC's counsel admitted ACC had received notice of the receivership and a copy of the Order appointing the receiver on January 18." The court denied ACC's motions, determining that the receiver adequately represented ACC's interests and noting that ACC would "have the opportunity to object to the claims process when the Receiver distributes the liquidated funds." ACC did not appeal this order.
The receiver sold LSI's property, and the district court in the receivership action approved the receiver's final report on May 6, 2016, authorized a final distribution of the receivership assets, and discharged the receiver. Respondent Stevens Industries, Inc. (Stevens), an Illinois corporation doing business in Minnesota, purchased some of LSI's property. ACC did not object to the receiver's final report or appeal the court's May 6 order.
In the contract action, the district court granted summary judgment to ACC for *834 breach of contract and awarded it damages in the amount of $444,646.48. LSI did not oppose the summary-judgment motion. ACC subsequently sued Stevens and the CoBe defendants, alleging that Stevens was liable for ACC's judgment against LSI in the contract action under the successor-liability doctrine, and seeking "all monetary relief ... available to ACC against Cohen, Chaffee, and CoBe under the piercing the corporate veil theory" (the veil-piercing action). In January 2018, the district court dismissed ACC's claim against Stevens after converting Stevens's dismissal motion to a summary-judgment motion, and the court granted summary judgment to the CoBe defendants.[2]
This appeal follows.
ISSUE
Did the district court err by granting summary judgment to the CoBe defendants on ACC's veil-piercing claim?
ANALYSIS
ACC argues that the district court erred in granting summary judgment to the CoBe defendants on its veil-piercing claim because the "veil piercing claim belongs to ACC, not LSI Corporation," and because ACC "seeks to recover from the funds and assets of [the CoBe defendants], not from LSI." ACC argues that neither the receivership order nor a receiver's powers under Minn. Stat. § 576.29, subd. 1(a)(3), provided the receiver "any right to investigate, settle or otherwise compromise ACC's piercing claim as the claim did not/does not belong to LSI." ACC also argues that the collateral-attack doctrine does not apply as a matter of law, and that this court must reverse and remand to allow ACC to proceed with its veil-piercing claim against the CoBe defendants.
In an appeal from a grant of summary judgment, appellate courts review de novo (1) whether there are any genuine issues of material fact for trial; and (2) whether the district court erred in its application of the law. Linn v. BCBSM, Inc. , 905 N.W.2d 497, 501 (Minn. 2018) ; Minn. R. Civ. P. 56.01 ("The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[3] When reviewing the record following a grant of summary judgment, appellate courts view the evidence "in the light most favorable to the party against whom summary judgment was granted." Senogles v. Carlson , 902 N.W.2d 38, 42 (Minn. 2017).
Receiver's power to assert a veil-piercing claim against LSI
In arguing that the receiver lacked the power to assert or settle ACC's veil-piercing claim against LSI, ACC asks this court to interpret Minnesota's receivership statutes, Minn. Stat. §§ 576.21 -.53 (2016). We review the statutory question de novo. See Laymon v. Minn. Premier Props., LLC , 913 N.W.2d 449, 452 (Minn. 2018) (reviewing question of Minnesota law de novo). The primary goal in statutory interpretation is to give effect to the intent *835 of the Legislature. Swanson v. Brewster , 784 N.W.2d 264, 274 (Minn. 2010). When reviewing a statute, courts "construe words and phrases according to their plain and ordinary meaning," and should interpret a statute "to give effect to all its provisions." Id . (quotation omitted). Courts "should construe a statute to avoid absurd results and unjust consequences," and if a "statute's language is unambiguous, [this court] must give it its plain meaning." Id . (quotation omitted).
We note first that the statutory provisions under which a receiver may be appointed "are not ... exclusive and the court may under its general equity powers appoint receivers in other cases in accordance with the existing practice." Asleson v. Allison , 188 Minn. 496, 247 N.W. 579, 580 (1933).
The appointment of a receiver is made by a court of equity, and its purpose is to accomplish, as far as practicable, complete justice for the parties before it. Its object is to secure and hold all property so that it may be available for the application of the final judgment.
Id. "Piercing the corporate veil is an equitable remedy that may be applied in order to avoid an injustice." Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole , 766 N.W.2d 334, 339 (Minn. App. 2009). "A court may pierce the corporate veil to hold a shareholder liable for the debts of the corporation when the shareholder is the alter ego of the corporation." Hoyt Props., Inc. v. Prod. Res. Grp. , 736 N.W.2d 313, 318 (Minn. 2007).
A "general receivership" is a "receivership over all or substantially all of the nonexempt property of a respondent for the purpose of liquidation and distribution to creditors and other parties in interest." Minn. Stat. § 576.21(h). The "respondent" in a receivership is "the person over whose property the receiver is appointed," and a "party in interest" in a general receivership is "any creditor of the respondent." Id .(m), (s). A receiver serves as "a fiduciary representing the court and all parties in interest, and the purpose and scope of a receivership is defined by court order," while the receivership statute and the "court's general equitable powers" define a receiver's powers. Equity Trust , 766 N.W.2d at 341 ; see also Minn. Stat. § 576.29, subds. 2, 3 (stating that a receiver "shall have the duties specifically conferred by this chapter or otherwise by statute, rule, or order of the court," which may be modified by the court); State Bank of Delano v. CenterPoint Energy Res. Corp. , 779 N.W.2d 582, 587 (Minn. App. 2010) ("A receiver's powers are defined by the orders of the court and include authority as may reasonably or necessarily be implied for such orders." (quotation omitted) ), review denied (Minn. May 26, 2010). In addition to those powers specifically conferred by a court's order, a receiver has "the power to assert rights, claims, causes of action, or defenses that relate to receivership property," and "to seek and obtain instruction from the court with respect to any matter relating to the receivership property, the exercise of the receiver's powers, or the performance of the receiver's duties." Minn. Stat. § 576.29, subd. 1(a). Additionally, a general receiver, such as the one appointed in the receivership action, has the power
(1) to (i) assert, or when authorized by the court, to release, any rights, claims, causes of action, or defenses of the respondent to the extent any rights, claims, causes of action, or defenses are receivership property; (ii) maintain in the receiver's name or in the name of the respondent any action to enforce any right, claim, cause of action, or defense; and (iii) intervene in actions in which the respondent is a party for the purpose of exercising the powers under this clause or requesting transfer of venue of the action to the court; (2) to pursue any *836 claim or remedy that may be asserted by a creditor of the respondent under [Minnesota Uniform Voidable Transactions Act].
Id ., subd. 1(b).
Here, the district court appointed the receiver as a "general receiver" with "all of the powers and duties of a general receiver set forth in Minn. Stat. § 576.29." Concluding that the legislature intended "to grant the Receiver the power to assert the claims, causes of action and defenses, including veil-piercing claims, of the creditors and other parties who may have an interest in the receivership property," the court explicitly gave the receiver the ability to "initiate any legal proceedings viewed necessary to enforce such payment obligations, including ... seeking of equitable relief;" and to "[i]nvestigate, pursue ... any and all claims that [LSI] ... may have against any third party, including [LSI]'s insiders, directors, officers, and owners, and including fraudulent transfer claims, ... or other similar improper transactions."
In Snyder Electric Co. v. Fleming , creditors of an insolvent corporation sought to pierce the corporate veil to recover money judgments against the corporation by suing its sole stockholder and CEO. 305 N.W.2d 863, 866-67 (Minn. 1981). The district court held that the creditors lacked standing because under Minnesota law, only a receiver could recover from a defunct corporation during dissolution proceedings. Id . at 870. The supreme court reversed, concluding that there is "no legal requirement that [creditors] pursue their claim through a receiver" when "there are no assets for a receiver to sequester, no interests for him to liquidate." Id . at 870-71. But the supreme court noted that, had the corporation possessed assets for distribution, the court should have either joined all necessary creditors in the action or appointed "a receiver." Id . at 871 n.3. We believe that the supreme court contemplated that a receiver could bring veil-piercing claims on behalf of a creditor when a corporation has assets for a receiver's distribution, as LSI did in the receivership action.
Further, in Equity Trust , victims of a consumer-fraud scheme sought to pierce the corporate veil to recover from the owners of the businesses used to perpetrate the scheme. 766 N.W.2d at 336-37. The district court consolidated eight separate lawsuits involving the scheme and appointed a general receiver over the main company used to perpetrate the scheme. Id . at 337. The receiver used its equity-based powers to expand the receivership over three other entities and required the shareholders of the main company to turn over $750,000 that had been fraudulently transferred out of receivership property. Id. at 338. This court concluded that the district court did not err in expanding the receivership because the district court's order appointing the receiver "permitted the receiver to request supplementation or amendment of the receivership order," and because a district court "may also expand a receivership under its general equity powers." Id . at 341-42. By expanding the receivership to pursue money held by the company's shareholders, the district court enabled the receiver to "merely perform[ ] its duty to identify, locate, and seize the assets of receivership entities wherever they may be found." Id . at 342 (quotations omitted).
Here, in the receivership action, the district court explicitly authorized the receiver to pursue claims against LSI's officers, directors, and owners, which included the CoBe defendants. The court also gave the receiver the ability to seek guidance on and pursue further equitable remedies, which could have included a veil-piercing claim. See Minn. Stat. § 576.29, subd. 1(a)(3) (granting receiver the ability to assert *837 claims relating to receivership property). Through its veil-piercing claim against the CoBe defendants, ACC seeks to "locate, and seize" the "assets" belonging to LSI, i.e., receivership property. As contemplated in Equity Trust , this is one of a receiver's duties. As a judgment creditor of LSI, ACC was a party in interest, which allowed it to file an appearance and to ask the receiver to "request instructions" from the district court pertaining to its claims against the CoBe defendants. See Minn. Stat. §§ 576.35, subd. 1 ("Any party in interest may make an appearance in a receivership."), .21(m) (defining "party in interest"); Black's Law Dictionary 424 (9th ed. 2009) (defining "creditor" as "[a] person or entity with a definite claim against another, esp. a claim that is capable of adjustment and liquidation").
Under Equity Trust , a receiver is able to pierce the corporate veil and to exercise power over shareholders to collect receivership property. 766 N.W.2d at 342 ; see also Minn. Stat. § 576.23 ("The court has the exclusive authority to direct the receiver and the authority over all receivership property wherever located, including, without limitation, authority to determine all controversies relating to ... receivership property, and all matters otherwise arising in or relating to the receivership, the receivership property, [or] the exercise of the receiver's powers."); Minn. Hotel Co. v. ROSA Dev. Co. , 495 N.W.2d 888, 893 (Minn. App. 1993) ("The [district] court has the discretion in receivership proceedings to do what is best for all concerned.").
Based on the plain meaning of Minn. Stat. § 576.29, we conclude that a duly appointed receiver has the authority to assert a creditor's veil-piercing claims "that relate to the receivership property" in a receivership action.[4] See Minn. Thresher Mfg. Co. v. Langdon , 44 Minn. 37, 46 N.W. 310, 311 (1890) (holding that a receiver "succeeds to the rights of the creditors as well as of the insolvent corporation, and has the power to enforce the rights which the creditors, but for the proceedings, might have enforced on their own behalf"). In this case, ACC sought to recover money owed to it under its judgment against LSI. ACC therefore sought to satisfy LSI's debt through the distribution of "receivership property," and its veil-piercing claim therefore "related to receivership property." Because the receivership statute and the district court's order granted the receiver the power to pursue "claims related to receivership property," the district court did not err by concluding that the receiver had the power to assert ACC's veil-placing claim.
ACC's veil-piercing claim as an improper collateral attack on the receivership action
ACC argues that the district court erred by concluding that its veil-piercing claim constituted an improper collateral *838 attack on the receivership action. We disagree. "A valid judgment may not be collaterally attacked." First Minn. Bank v. Overby Dev., Inc. , 783 N.W.2d 405, 409 (Minn. App. 2010) (citing Fid. & Deposit Co. of Md. v. Riopelle , 298 Minn. 417, 216 N.W.2d 674, 677 (1974) ). "A collateral attack includes 'every proceeding in which the integrity of the judgment is challenged' in a separate action." Greer v. Prof'l Fiduciary, Inc. , 792 N.W.2d 120, 127 (Minn. App. 2011) (quoting In re Wretlind , 225 Minn. 554, 32 N.W.2d 161, 168 (1948) ); see also Black's Law Dictionary 298 (9th ed. 2009) (defining "collateral attack" as an "attack on a judgment in a proceeding other than a direct appeal").
ACC argues that the district court erroneously relied on Greer in ruling that its veil-piercing claim represented an improper collateral attack because Greer is inapposite. In Greer , an individual who had been under a guardianship and conservatorship filed tort claims against her conservator that, in part, challenged the necessity of certain expenditures made during her guardianship and conservatorship. 792 N.W.2d at 130. Because the district court finalized and terminated both the guardianship and conservatorship, approving all expenditures made, and because Greer did not challenge either final order, this court concluded that allowing her claims to proceed would "effectively be challenging ... the probate court['s] ... orders allowing the accounts," and constitutes "the essence of a collateral attack." Id . at 130-31.
ACC maintains that Greer is inapposite, arguing that, unlike Greer, ACC was not entitled to notice of the receivership action, did not approve the receivership, and could not have stopped the receiver's sale of LSI's assets. But ACC's attorney acknowledged that ACC received notice of the receivership, and ACC filed an appearance in the receivership action and a motion to intervene. And, although ACC did not explicitly approve of the receivership, it did not object to the receiver's final report or appeal the district court's order confirming the report.[5]
Nevertheless, whether ACC's claim in its veil-piercing action amounts to an improper collateral attack on the receivership action turns on whether the receiver had the authority to assert ACC's veil-piercing claim against LSI, not on whether the receiver actually asserted that claim against LSI. See id . at 131 ("Thus, had [the conservatee] believed that the probate court's orders were a result of ... fraud or misrepresentation ... [she] could have requested the probate court to take corrective action within the prescribed time period. What she cannot do, however, is to seek such redress by collaterally attacking the probate court's orders in an independent proceeding."). The record here reflects that ACC did not ask the receiver to pierce the corporate veil of LSI on its behalf, nor did ACC object to the receiver's final report or appeal the district court's order affirming it.
Because ACC filed a notice of appearance in the receivership action, the receiver placed ACC on the "Master Service List" for the proceedings, ensuring that ACC would receive notice of the proceedings.[6] See Minn. Stat. § 576.35, subd. 2 *839 ("From time to time the receiver shall file an updated master service list consisting of the names ... of ... all persons who have filed a notice of appearance."). ACC received notice of and could have objected to the receiver's final report, which reflected a disbursement of funds to Cohen and Chaffee (two CoBe defendants) as secured creditors of LSI. See Minn. Stat. § 576.38, subd. 4 ("The receiver shall give notice of the filing of the final report and request for discharge to all persons who have filed notices of appearance. If there is no objection within 21 days, the court may enter an order approving the final report and discharging the receiver without the necessity of a hearing."). As in Greer , ACC cannot seek redress by collaterally attacking the court's order confirming the receiver's final report and the disbursement of funds to the CoBe defendants.
ACC cites In re Rehab. of Centaur Ins. Co. , 238 Ill.App.3d 292, 179 Ill.Dec. 459, 606 N.E.2d 291, 295-96 (1992), which analyzed veil-piercing in a reinsurance case, and In re Ozark Rest. Equip. Co. , 816 F.2d 1222, 1224-26 (8th Cir. 1987), analyzing veil-piercing claims in a bankruptcy proceeding under Arkansas law. Neither Centaur nor Ozark is binding on this court. See Minneapolis Grand, LLC v. Galt Funding LLC , 791 N.W.2d 549, 556 (Minn. App. 2010) ("Neither unpublished opinions of this court, nor decisions from foreign jurisdictions, are binding precedent."). Regardless, Centaur and Ozark are inapposite.
In Centaur , an Illinois appellate court concluded that a director-rehabilitator of an insurance company did not possess the authority to assert a veil-piercing claim against the company because the director derives his authority from statute, and cannot act in contravention of or beyond the statute, which did not allow for a director to assert a creditor's veil-piercing claims. 179 Ill.Dec. 459, 606 N.E.2d at 294-95. And in Ozark , the Eighth Circuit concluded that a bankruptcy trustee in Arkansas could not bring a creditor's veil-piercing claim in part because Arkansas law does not consider veil-piercing claims to be the property of the bankruptcy estate, belonging instead to a creditor as an injured third-party. 816 F.2d at 1224-30. In contrast, the Minnesota receivership statute does not restrict a receiver's powers to only those enumerated in the statute, rather it allows a receiver to seek expansion of its powers, and for a district court to supplement them. See Delano , 779 N.W.2d at 587 (stating that "a district court's order may authorize a receiver to perform more duties than are required" under the receivership statute).
In the receivership action, ACC was an unsecured creditor. In denying ACC's motions to intervene and enjoin the receivership action, the district court concluded that the receiver adequately represented ACC's interests. ACC did not appeal that order or the order confirming the receiver's final report. See Minn. R. Civ. App. P. 103.03(g) (allowing party to appeal a final order affecting a substantial right made in a special proceeding); Vill.Apts. v. State (In re Objections and Defenses to Real Property Taxes for the 1980 Assessment) , 320 N.W.2d 729, 731 n.3 (Minn. 1982) (listing receivership as a "special proceeding"); Weiler v. Lutz , 501 N.W.2d 667, 669-70 (Minn. App. 1993) ("The district court's refusal to permit intervention as of right is an appealable order." (footnote omitted) ), aff'd sub nom., Valentine v. Lutz , 512 N.W.2d 868 (Minn. 1994). We conclude that allowing ACC's veil-piercing claim to *840 proceed would amount to an impermissible collateral attack on the receivership action.
ACC also argues that it alleged sufficient facts to survive summary judgment on the veil-piercing claim. But ACC identifies no genuine issue of any material fact. And we do not consider the merits of ACC's veil-piercing claim because the district court did not address its merits. See Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc. , 913 N.W.2d 687, 692 (Minn. 2018) ("Ordinarily, we would not consider an issue not decided by the district court."). ACC further argues that the district court erred in dismissing its veil-piercing claim under the doctrine of res judicata. Because we decide this appeal on other grounds, we do not address this issue. See Court Park Co. v. County of Hennepin , 907 N.W.2d 641, 645 n.4 (Minn. 2018) (declining to address issue when deciding case on other grounds).
Because ACC's veil-piercing claim amounts to an impermissible collateral attack, we conclude that the district court did not err in granting summary judgment against ACC and in favor of the CoBe defendants. See Lamson v. Towle-Jamieson Inv. Co. , 187 Minn. 368, 245 N.W. 627, 628 (1932) (holding that corporation's creditors could not pursue claims after receiver for same corporation had opportunity to assert veil-piercing claims).
DECISION
Because a duly appointed receiver in a general receivership under Minn. Stat. § 576.29 has the authority to assert veil-piercing claims against the corporation under receivership, and because ACC could have, but did not, ask the receiver to assert a veil-piercing claim in the receivership action, ACC's veil-piercing action constitutes an improper collateral attack on the receivership action. The district court did not err in granting summary judgment against ACC on its veil-piercing claims.
Affirmed.

Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

We take judicial notice of the orders in both the contract action and receivership action, which provide the background for the present dispute. See Minn. R. Evid. 201(b) (allowing for judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

ACC does not challenge the district court's grant of summary judgment to Stevens.

The district court applied the former version of rule 56, which was recently "revamped" to more "closely follow" the federal rules. Minn. R. Civ. App. P. 56 2018 advisory comm. cmt. When promulgating the amendments to rule 56, effective on July 1, 2018, and applicable to pending cases and those filed thereafter, the Minnesota Supreme Court specifically indicated that the language describing the standard for granting summary judgment reflected recent caselaw. Order Promulgating Amendments to Rules of Civil Procedure , No. ADM04-8001 (Minn. Mar. 13, 2018). Because the legal standard is unchanged, we cite to the current version of rule 56.01, even though the district court's decision was issued before the amended rule took effect.

We note that decisions from other jurisdictions, while not binding on this court, are consistent with this outcome. See, e.g. , Koch Ref. v. Farmers Union Cent. Exch., Inc. , 831 F.2d 1339, 1346 (7th Cir. 1987) (recognizing that Illinois, Indiana, and Wisconsin law allow a bankruptcy trustee to bring veil-piercing claims on behalf of creditors); Corcoran v. Frank B. Hall & Co., Inc ., 149 A.D.2d 165, 174-75, 545 N.Y.S.2d 278 (1989) ("While the defendants assert that a corporation may never pierce its own veil in this state, ... there is an obvious difference between an 'alter ego' action brought by a ... Receiver for a defunct corporation and that brought by an operating corporation. ... Where, however, the corporate entity is in receivership or insolvent, the receiver's suit is for the benefit of the company's creditors and not its shareholders." (emphasis omitted) ); Sturkie v. Sifly , 280 S.C. 453, 313 S.E.2d 316, 317-18 (S.C. Ct. App. 1984) (reviewing veil-piercing action brought by receiver against shareholders of corporation in receivership).

At a hearing in this action, ACC claimed that it did not object to the receiver's final report or appeal from the district court's order confirming the receiver's final report because ACC believed that the receiver did not have the "duty to investigate or settle it[s] [veil-piercing claim]." ACC therefore also believed that it need not object to the receiver's final report or appeal from the district court's order approving the receiver's final report.

After ACC filed a notice of appearance, the Receiver issued an "Updated Master Service List" that includes counsel for ACC. The "Master Service List," dated May 2016, and included with the affidavit of service for the "Notice of Filing of Order for the Order Approving Receiver's Final Report, Authorizing a Final Distribution of Receivership Assets and Ordering Discharge of Receiver," also lists counsel for ACC.