KAUTZ, Justice.
*757 [¶1] This is a consolidated appeal involving professional malpractice, breach of fiduciary duty, and conversion claims arising out of conservatorship and divorce proceedings. In 2011, Georgene Tozzi filed for divorce from the appellant, John R. Tozzi. Concerned about Mr. Tozzi's mental state and potential waste of the marital estate, Mrs. Tozzi petitioned the district court for the appointment of a temporary conservator for Mr. Tozzi. The district court granted the petition and appointed Jeff Wilkinson as Mr. Tozzi's conservator and J. Denny Moffett as counsel for the conservator. Mr. Wilkinson and Mr. Moffett retained Richard J. Mulligan to represent Mr. Tozzi in the divorce. In October 2013, after the divorce concluded, the district court determined the conservatorship was no longer necessary and terminated it. In 2015, Mr. Tozzi filed a lawsuit against Mr. Wilkinson, Mr. Moffett and Mr. Mulligan (collectively referred to as "the Appellees") alleging conversion, professional malpractice, and breach of fiduciary duty. The district court granted summary judgment in favor of the Appellees, and Mr. Tozzi appeals those orders.
ISSUES
[¶2] Mr. Tozzi states the following claims in his appeal against Mr. Moffett and Mr. Wilkinson:
ISSUE 1: Did disputes of material fact preclude entry of summary judgment?
ISSUE 2: Was it error for the [d]istrict [c]ourt to strike the affidavit of [Mr. Tozzi's] expert for offering opinions based on hypothetical facts, and to grant summary judgment in reliance entirely on the non-factual affidavits of [the defendant's] experts?
ISSUE 3: Did the [d]istrict [c]ourt misapply the doctrines of res judicata and collateral estoppel to a legal malpractice claim alleging misconduct in obtaining the prior judgment?
ISSUE 4: Was it [e]rror for the [d]istrict [c]ourt to [d]isregard the [c]ommon [s]ense [e]xception in [a]pplying the [s]tandard [a]pplicable to [l]egal [m]alpractice?
ISSUE 5: In a [c]onservatorship, do Wyoming Statutes require submission of detailed billings to the [c]ourt for approval of attorneys' fees and [c]onservator fees?
[¶3] Mr. Tozzi raises the following issues in his appeal against Mr. Mulligan:
ISSUE 1: Did disputes of material fact preclude entry of summary judgment?
ISSUE 2: Was it error for the [d]istrict [c]ourt to strike the affidavit of [Mr. Tozzi's] expert for offering opinions based on hypothetical facts, and to grant summary judgment in reliance entirely on the non-factual affidavits of [the defendants'] experts?
ISSUE 3: Is an attorney hired by a [c]onservator a third party claimant, such that his claim for attorneys' [fees] must be submitted in accordance with statute?
FACTS
[¶4] In 2011, Mrs. Tozzi filed for divorce. Mr. Tozzi did not respond to the divorce complaint and the clerk of court entered a default against him. Mrs. Tozzi then requested the district court appoint a temporary conservator for Mr. Tozzi to prevent waste of the marital property due to Mr. Tozzi's mental state. Mr. Tozzi struggled with depression throughout his life, and his condition worsened after Mrs. Tozzi filed for divorce. She was concerned with his inability to receive and evaluate information, make or communicate decisions, or manage the property. In the days leading up to Mrs. Tozzi's request for the conservator, Mr. Tozzi's daughter visited her father and found him living in filth and squalor and not taking care of himself. The daughter tried to convince Mr. Tozzi to seek medical treatment, and after he refused, she called for emergency assistance and he was taken to the hospital via ambulance.
*758 The district court appointed Mr. Tozzi's longtime accountant, Jeff Wilkinson, as temporary conservator, and J. Denny Moffett as legal counsel for Mr. Wilkinson as conservator. Mr. Wilkinson and Mr. Moffett retained Richard J. Mulligan to serve as Mr. Tozzi's counsel in the divorce proceedings.
[¶5] The district court converted the temporary conservatorship to a permanent conservatorship, and the divorce proceedings continued to trial after Mr. Mulligan convinced the court to set aside the default judgment entered against Mr. Tozzi. After a trial, the district court entered a divorce decree dividing the marital property. Mr. Tozzi received approximately $75,000,000 in assets and Mrs. Tozzi received approximately $74,500,000 in assets.
[¶6] On May 20, 2013, seven months after the divorce decree was entered, Mr. Wilkinson and Mr. Moffett filed a petition requesting that the district court terminate the conservatorship. The district court heard the petition in July 2013, determined Mr. Tozzi was no longer in need of a conservator, and ordered that Mr. Wilkinson transfer the assets in the conservatorship to Mr. Tozzi and prepare the final report and accounting of the conservatorship. He did so, and on October 3, 2013, the district court entered an order approving the final report and accounting and terminated the conservatorship.
[¶7] Nearly a year later, Mr. Tozzi submitted a motion under Wyoming Rule of Civil Procedure 60(b), requesting the district court vacate its final order in the conservatorship except for the actual termination of the conservatorship. Mr. Tozzi argued the Appellees engaged in continued misconduct during the entirety of the conservatorship and alleged they made various misrepresentations to the court. Mr. Tozzi also claimed the Appellees took excessive fees from the conservatorship, failed to follow statutory procedures for submitting attorney's fees claims, and the final report and accounting did not comply with the law. He explained he did not bring the motion sooner because he could not retain counsel until August 2014 and did not have access to Mr. Wilkinson's conservator records until September 2014. The district court denied the motion, finding that Mr. Tozzi had not filed his motion in a reasonable amount of time after entry of the order and he failed to provide newly discovered evidence that would justify setting aside the order in the conservatorship proceeding.
[¶8] Mr. Tozzi did not appeal the district court's order denying the Rule 60(b) motion. Instead, he filed a complaint against Mr. Wilkinson and Mr. Moffett alleging conversion of funds, professional malpractice, and breach of fiduciary duty. He filed a separate complaint against Mr. Mulligan, also alleging conversion of funds and professional malpractice. The two cases were consolidated for discovery and trial. The district court issued a scheduling order, which included the requirements and deadlines for expert witness designations. The parties filed their expert witness designations on the date designated in the scheduling order.
[¶9] Each of the Appellees filed a motion for summary judgment. While each motion varied, all three were based on these premises: 1) there were no genuine issues of material fact in dispute and the Appellee was entitled to judgment as a matter of law; and 2) the doctrines of res judicata and collateral estoppel precluded Mr. Tozzi from relitigating these claims. Mr. Tozzi responded to each motion, and also filed an affidavit from one of his expert witnesses, Henry Bailey, an attorney who has practiced law in Wyoming for almost forty years. Mr. Moffett and Mr. Mulligan moved to strike Mr. Bailey's affidavit under Wyoming Rule of Civil Procedure 37(c) on the ground that the affidavit contained opinions about causation that were not disclosed in Mr. Bailey's expert witness designation. They also pointed out that in his deposition, Mr. Bailey testified he had no opinions regarding causation and damages; therefore his affidavit opinions were directly contrary to his previous testimony. The district court determined that, because Mr. Bailey's causation opinions were not disclosed in his expert witness designation, they were untimely, and granted the motion to strike Mr. Bailey's affidavit.
[¶10] The district court granted summary judgment in favor of the Appellees. The court agreed that the doctrines of res judicata and collateral estoppel prevented Mr. Tozzi from *759 relitigating the reasonableness and lawfulness of the fees that were approved by the court in the conservatorship proceedings. The court also concluded that each of the Appellees had demonstrated a prima facie case for summary judgment and Mr. Tozzi had failed to come forward with evidence demonstrating a genuine issue of material fact. Mr. Tozzi timely appealed each of those orders.
STANDARD OF REVIEW
[¶11] When reviewing a district court's order granting summary judgment, we review the decision de novo .
[W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. Snyder v. Lovercheck , 992 P.2d 1079, 1083 (Wyo. 1999) ; 40 North Corp. v. Morrell , 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id . If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of material fact for trial. Roberts v. Klinkosh , 986 P.2d 153, 155 (Wyo. 1999) ; Downen v. Sinclair Oil Corp ., 887 P.2d 515, 519 (Wyo. 1994).
Bear Peak Res., LLC v. Peak Powder River Res., LLC , 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017) (quoting Rogers v. Wright , 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016) ).
[¶12] The district court's decision to strike Mr. Bailey's affidavit occurred before and independently of its decision to grant summary judgment. A district court's decision regarding the admissibility of evidence is reviewed for an abuse of discretion. Armstrong v. Hrabal , 2004 WY 39, ¶ 10, 87 P.3d 1226, 1230 (Wyo. 2004).
DISCUSSION
[¶13] Due to the nature of the various issues Mr. Tozzi brings on appeal, and the fact that some of the issues can be addressed in conjunction with others, we will address issues in categories and not necessarily in the order presented by Mr. Tozzi.
Res Judicata and Collateral Estoppel
[¶14] In each of his lawsuits, Mr. Tozzi asserted the Appellees converted conservatorship funds by receiving improper and excessive fees. The district court determined Mr. Tozzi's claims were barred by the doctrines of res judicata and collateral estoppel. It concluded the fees had already been deemed appropriate when the conservator court approved the final report and accounting, and Mr. Tozzi did not appeal that determination. Therefore, the issue could not be relitigated in the present proceeding.
[¶15] Mr. Tozzi has not challenged on appeal the district court's application of res judicata and collateral estoppel to bar his conversion claim against Mr. Mulligan. In his appellate brief concerning Mr. Moffett and Mr. Wilkinson, his issue statement refers to the district court's application of res judicata simply to a "legal malpractice" claim, which would apply only to Mr. Moffett; however, the substance of his argument refers to both Mr. Moffett and Mr. Wilkinson. The internal inconsistency of Mr. Tozzi's brief is of no consequence in this circumstance as the applicability of res judicata and collateral estoppel is the same with respect to both Mr. Moffett and Mr. Wilkinson.
[¶16] Res judicata and collateral estoppel are preclusion doctrines that serve important functions in the judicial process:
To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.
*760 Worman v. Carver , 2002 WY 59, ¶ 13, 44 P.3d 82, 86 (Wyo. 2002) (quoting Montana v. United States , 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979) ). While the two doctrines serve similar purposes, they are used in different circumstances. Res judicata, also called claim preclusion, "bars relitigation of previously litigated claims or causes of action." Slavens v. Bd. of County Comm'rs for Uinta County , 854 P.2d 683, 686 (Wyo. 1993). To determine whether res judicata applies, courts analyze the following four factors:
(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.
Id . (quoting Moore v. Moore , 835 P.2d 1148, 1151 (Wyo. 1992) ). Importantly, res judicata "bars not just issues that were actually litigated in the prior action, but issues that could have been raised in that action." Wilson v. Lucerne Canal and Power Co ., 2007 WY 10, ¶ 23, 150 P.3d 653, 662 (Wyo. 2007).
[¶17] Collateral estoppel, also called issue preclusion, "bars relitigation of previously litigated issues." Slavens , 854 P.2d at 686. The courts analyze four factors when determining whether collateral estoppel applies:
(1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.
Id . (emphasis in original).
[¶18] Mr. Tozzi did not make a claim of conversion in the conservatorship as he does in the present matter. However, the district court determined the conservator fees and conservator's attorney's fees were lawful and reasonable when it "confirm[ed] and approve[d] the actions and expenditures of the Conservator" and approved the final accounting of the conservatorship under Wyo. Stat. Ann. §§ 3-3-1103 and 1106 (Lexis Nexis 2013). That decision is necessarily part and parcel of Mr. Tozzi's conversion claim because if a finder of fact were to determine Mr. Wilkinson and Mr. Moffett were entitled to the fees from the conservatorship, they cannot have converted the funds. Thus, if one of the preclusion doctrines applies here, it is collateral estoppel.
[¶19] We conclude that collateral estoppel precludes Mr. Tozzi from prevailing on his conversion claim in this matter. In order to prevail on a conversion claim, Mr. Tozzi must prove the following elements:
(1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendants lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.
Johnson v. Reiger , 2004 WY 83, ¶ 27, 93 P.3d 992, 999-1000 (Wyo. 2004). In order to demonstrate he had the right to possess the money paid in fees at the time of conversion, Mr. Tozzi would have to prove that Mr. Wilkinson and Mr. Moffett took money to which they were not entitled. This exact issue was decided in the previous proceeding when the district court approved the conservator's report, thereby also approving the fees. Therefore, the identical issue has been raised in both proceedings, satisfying the first collateral estoppel factor. See Slavens , 854 P.2d at 686 (The claims of slander and defamation, intentional interference with prospective advantage, violation of the duty of good faith and fair dealing, outrageous misconduct, intentional infliction of emotional distress, malicious prosecution, and failure to pay wages brought against the plaintiffs' former employer contained the identical issue of wrongful *761 disciplinary action that was previously litigated in an administrative proceeding.).
[¶20] Further, the district court's approval of the final report and accounting resulted in a judgment on the merits regarding the fees. The purpose of the final order in a conservatorship "confirms an incapacitated person's assets, income, and expenses, but it also adjudicates the propriety of the conservator's management of the incapacitated person's estate." Greer v. Prof'l Fiduciary, Inc ., 792 N.W.2d 120, 128 (Minn. Ct. App. 2011). The district court's order explicitly stated:
The Conservator has filed with the Court and served on [Mr. Tozzi] a full and complete accounting to [Mr. Tozzi] and his adult children. No objections have been filed thereto and accordingly, the Court confirms and approves the accountings as required by W.S. §§ 3-3-902 and 3-3-1103 and confirms and approves the actions and expenditures of the Conservator as disclosed in such accounting.
Therefore, the district court concluded the conservator's actions and expenditures within the conservatorship, including the conservator's and his attorney's fees, were appropriate, resulting in a judgment on the merits of that issue.
[¶21] Mr. Tozzi argues collateral estoppel should not apply because he was not a party to the conservatorship proceeding. He claims he could not be a party to the proceeding because he took no action in the conservatorship, and that, while he may be in privity with Mr. Wilkinson as the conservator when it comes to third-parties such as creditors, he is not in privity with Mr. Wilkinson for other purposes. While Mr. Tozzi did not request the commencement of the conservatorship proceedings, the proceedings in their entirety revolved around Mr. Tozzi. For preclusion purposes, a party is defined as: "a person who has been named as a party and has a right to control the lawsuit either personally, or, if not fully competent, through someone appointed to protect the person's interest." Black's Law Dictionary 1232 (9th ed. 2009). Mr. Tozzi certainly had the right to control the conservatorship himself or through his conservator who was appointed to protect Mr. Tozzi's interests.
[¶22] The fact that Mr. Tozzi was the ward in the conservatorship does not mean he did not have the opportunity to participate in the proceedings on a personal level. The conservator statutes require that Mr. Tozzi receive notice and give him the opportunity to assert control in parts of the conservatorship. See Wyo. Stat. Ann. § 3-3-102(a) (Lexis Nexis 2013) ("Notice of filing of a petition for appointment of an involuntary conservator shall be served on the proposed ward ..."); Wyo. Stat. Ann. § 3-3-103 (Lexis Nexis 2013) ("After the petition is filed ... the proposed ward ... may demand a jury trial ..."); Wyo. Stat. Ann. § 3-3-1103 (LexisNexis 2013) ("Notice of hearing on the final report of a conservator shall be served on the ward or his personal representative unless notice is waived."); Wyo. Stat. Ann. § 3-3-1105(a) (Lexis Nexis 2013) ("At any time, not less than six (6) months after the appointment of a guardian or conservator, the ward may petition the court alleging that he is no longer a proper subject of the guardianship or conservatorship and asking that the guardianship or conservatorship be terminated."). Thus, Mr. Tozzi was a party to the conservatorship and collateral estoppel can be asserted against him in the present action.
[¶23] Finally, Mr. Tozzi argues he did not have a full and fair opportunity to litigate the issue regarding the fees in the conservatorship because he was "legally unable to take legal action except through his [c]onservator and attorney[.]" We disagree. Mr. Tozzi argues Mr. Wilkinson and Mr. Moffett actively prohibited Mr. Tozzi from participating in any way in the conservatorship proceedings. However, he has not made any allegations that they prohibited his participation once the court determined the conservatorship should be terminated. The district court approved the final report and accounting two and a half months after it found Mr. Tozzi was capable of managing his own affairs. Mr. Tozzi has not alleged he did not receive notice of the final report and accounting, and the district court's order is clear Mr. Tozzi received notice of the hearing the court held before approving the report. When it approved the report, the court noted that no objections to the report had been filed. If Mr. *762 Tozzi wanted to contest the fees as unreasonable, he had the opportunity to do so. Significantly, he did not file an appeal from that order. See Slavens , 854 P.2d at 686-87.
[¶24] Mr. Tozzi's ability to fully litigate this issue is also demonstrated by the fact that he retained counsel and filed a motion under Rule 60(b) challenging the fees approved in the final report and accounting. In the motion, Mr. Tozzi alleged Mr. Wilkinson and Mr. Moffett failed to comply with the conservator statutes and submitted false and unreasonable claims in the final report and accounting. He also alleged the Appellees all misrepresented various facts to the district court involving Mr. Tozzi's desire to participate in the conservatorship and divorce proceedings. The district court denied the motion on the bases that Mr. Tozzi did not file the motion within a reasonable time (one year after the court approved the final report and accounting) and his misrepresentation allegations, without supporting affidavits or other evidence, were insufficient to demonstrate clear and convincing evidence of fraud as required by Rule 60. Again, Mr. Tozzi did not appeal the district court's decision; instead choosing to collaterally attack the court's order by filing a separate lawsuit. See Greer , 792 N.W.2d at 129.
[¶25] The district court appropriately applied collateral estoppel to bar Mr. Tozzi from relitigating an issue that had been considered and decided in the conservatorship proceedings. Because the court had already approved the fees, Mr. Tozzi could not prove Mr. Wilkinson and Mr. Moffett had unlawfully converted the funds in the instant action, and Mr. Wilkinson and Mr. Moffett were entitled to summary judgment on this claim.
[¶26] Mr. Tozzi makes a cursory argument that the law of the case doctrine precluded the district court from using collateral estoppel in the summary judgment order. His argument consists of a conclusory statement followed by a one sentence quotation. The argument contains no legal analysis of the law of the case doctrine and its applicability here. This Court may decline to consider claims not supported by cogent argument and pertinent legal authority. Burnett v. Burnett , 2017 WY 57, ¶ 7, 394 P.3d 480, 482 (Wyo. 2017). Additionally, this is the first time Mr. Tozzi has asserted the law of the case doctrine. This Court generally declines to review issues raised for the first time on appeal. Walter v. Walter , 2015 WY 53, ¶ 17, 346 P.3d 961, 966 (Wyo. 2015). For these reasons, we decline to consider this argument.
[¶27] Mr. Tozzi also brings the following claim in his brief in the appeal of his claims against Mr. Wilkinson and Mr. Moffett: "In a [c]onservatorship, do Wyoming Statutes require submission of detailed billings to the [c]ourt for approval of attorney's fees and [c]onservator fees?" The substance of his argument is the district court should not have approved the conservator's fees or the conservator's attorney's fees without first reviewing detailed and itemized statements describing the fees. This is simply another way Mr. Tozzi attempts to attack the propriety of Mr. Wilkinson's and Mr. Moffett's fees. As already discussed, the district court determined the fees were appropriate in the conservatorship proceedings and Mr. Tozzi had the opportunity to fully litigate the issue. Therefore, he is barred from relitigating the issue here.
[¶28] While Mr. Tozzi does not challenge on appeal the application of collateral estoppel to his claims against Mr. Mulligan, he does raise a separate claim that is clearly barred by collateral estoppel for the same reasons explained above: "Is an attorney hired by a [c]onservator a third party claimant, such that his claim for attorneys' [fees] must be submitted in accordance with statute?" He argues Mr. Wilkinson should have submitted Mr. Mulligan's fees for the divorce proceedings through the claim process for conservatorships contained in Wyo. Stat. Ann. §§ 3-3-701 to 711 (Lexis Nexis 2013). It is obvious Mr. Tozzi makes this claim to collaterally attack the district court's approval of fees in the conservatorship proceedings. Mr. Tozzi made this same argument in his Rule 60 motion. Mr. Tozzi could have appealed the court's order denying the motion, but he did not do so. Consequently, he is precluded from raising the issue in these proceedings.
*763 Affidavit and Designation of Henry Bailey
[¶29] Mr. Tozzi filed an affidavit from his legal malpractice expert, Henry Bailey, contemporaneously with his responses to the summary judgment motions. After a request from Mr. Mulligan and Mr. Moffett, the district court struck Mr. Bailey's affidavit. Mr. Tozzi argues the district court's decision to strike the affidavit was erroneous. However, within the argument he also appears to take issue with the district court's conclusions in the summary judgment order regarding the opinions Mr. Bailey expressed in his expert witness designation. Mr. Tozzi's argument on this issue is confusing and conflates various issues without ever clearly addressing any of them. Much of the difficulty with Mr. Tozzi's argument stems from factual assertions he makes that are clearly contrary to the record.
[¶30] In an attempt to make sense of Mr. Tozzi's argument, we first describe what occurred in the district court. The court's scheduling order required the parties to designate their expert witnesses by October 14, 2016. Wyoming Rule of Civil Procedure 26(a)(2) requires that the designation be accompanied by a report that includes a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered by the witness in formulating the opinions, and the witness's qualifications. Mr. Tozzi filed his expert designation on the deadline and the designation contained Mr. Bailey's opinions and the facts and data he considered in reaching those opinions. The parties deposed Mr. Bailey and he explained the source of information for his opinions and what documents he did and did not review. He testified that he would not be giving any opinions regarding causation because he did not have any information on which to base an opinion about any effect of the Appellees' actions on the outcome of the case. He also explained he would not be offering opinions regarding damages for the same reason.
[¶31] With his responses to the various motions for summary judgment, Mr. Tozzi filed an affidavit from Mr. Bailey. The affidavit contained opinions that had not been disclosed in Mr. Bailey's designation and were contrary to his deposition testimony. For example, Mr. Bailey offered multiple opinions regarding causation in his affidavit. Mr. Moffett and Mr. Mulligan moved to strike Mr. Bailey's affidavit under Wyoming Rule of Civil Procedure 37(c). Mr. Tozzi did not file a response to the motion. The district court agreed that the opinions contained in Mr. Bailey's affidavit should have been disclosed in the expert designation and granted the motion to strike the affidavit from its consideration.
[¶32] Mr. Tozzi's argument on appeal does not focus on whether the district court properly struck Mr. Bailey's affidavit as a sanction under Rule 37. In fact, Mr. Tozzi's argument does not even mention Rule 37. Instead, his focus is on whether the information contained in Mr. Bailey's affidavit was admissible. The district court's decision to strike the affidavit, however, had nothing to do with the admissibility of the information contained in the document. Because Mr. Tozzi does not challenge the district court's actual reasoning for striking the affidavit, we decline to consider this argument any further.
[¶33] It is important to point out that the district court's decision to strike the affidavit had no bearing on the district court's ability to consider Mr. Bailey's opinions that were timely disclosed in his designation. The record discloses the district court did, in fact, consider Mr. Bailey's timely disclosed opinions, but determined the opinions were made without an independent review of the Appellees' files, the court file regarding the conservatorship and the divorce, or the entirety of the depositions. The court concluded Mr. Bailey's opinions were based upon speculation, conclusions, and hypotheticals, rendering an insufficient foundation for those opinions in a legal malpractice case. The court also found the opinions were insufficient to counter each of the Appellees' prima facie showings that there were no genuine issues of material fact in dispute.
[¶34] Mr. Tozzi argues the district court's decision on Mr. Bailey's opinions is contrary to established law. We need not consider this argument because, as will be discussed below, *764 even if the district court had considered Mr. Bailey's designated opinions and deposition testimony in its entirety, Mr. Tozzi nonetheless failed to carry his burden in summary judgment.
Summary Judgment
[¶35] Mr. Tozzi challenges the district court's decision to grant summary judgment in favor of the Appellees. His argument is difficult to understand but appears to assert the district court failed to consider a host of material issues of fact that he claims are in dispute. As analyzed above, the district court properly determined collateral estoppel prevented Mr. Tozzi from challenging the reasonableness of the attorney's and conservator's fees, resulting in summary judgment in favor of the Appellees on the conversion claim. Therefore, we need only consider the district court's decision to grant summary judgment in favor of the Appellees on the malpractice and breach of fiduciary duty claims.
Attorney Malpractice
[¶36] To prevail on an attorney malpractice claim, the plaintiff must prove: (1) the accepted standard of care in the legal profession; (2) the attorney's conduct departed from that standard; and (3) the attorney's conduct was the legal cause of the plaintiff's injuries. Moore v. Lubnau , 855 P.2d 1245, 1248 (Wyo. 1993). An attorney is "held to that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in Wyoming." Id. at 1250. To establish (1) the applicable standard of care, (2) whether there was a breach of that standard, and (3) whether the breach was the proximate cause of the injuries, a party will typically need to present expert testimony. "Expert testimony is necessary because most lay people are not competent to pass judgment on legal questions." Id . at 1249 ; Meyer v. Mulligan , 889 P.2d 509, 516 (Wyo. 1995). We have recognized that expert testimony may not be necessary only "when a lay person's common sense and experience are sufficient to establish the standard of care." Bevan v. Fix , 2002 WY 43, ¶ 40, 42 P.3d 1013, 1026 (Wyo. 2002).[1]
[¶37] Summary judgment proceedings in a malpractice action are similarly driven by these requirements.
In the procedural posture of summary judgment, ... the attorney, as the moving party, first must make a prima facie showing that no genuine issue of material fact exists before summary judgment can be granted in his favor. To that end, the attorney, through expert testimony or affidavit, is required to demonstrate that his conduct conformed to the accepted standard of legal care.
Gayhart v. Goody , 2004 WY 112, ¶ 17, 98 P.3d 164, 169 (quoting Bevan , ¶ 41, 42 P.3d at 1026 ). If the movant meets this burden, the burden shifts to the plaintiff to demonstrate through expert testimony that the attorney's conduct did not meet the required standard of care. Gayhart , ¶ 17, 98 P.3d at 169. If the plaintiff does not provide expert testimony making this showing, he has failed to establish a genuine issue of material fact exists. Moore , 855 P.2d at 1251.
[¶38] Mr. Mulligan designated Frank Chapman, an attorney with forty years of experience handling divorces, as an expert witness. Mr. Chapman opined that Mr. Mulligan's actions conformed to the accepted standard of legal care and that he exercised the degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in Wyoming. His affidavit contains a detailed analysis of what Mr. Mulligan did during the divorce proceedings and why his conduct met *765 the standard of care. He also explains there had been no evidence presented to support Mr. Tozzi's claims that Mr. Mulligan ignored Mr. Tozzi's wishes or prevented him from participating in the divorce trial. He also explains why, in his opinion, Mr. Tozzi did not suffer any damages from the outcome of the divorce, and if he did, the damages could not be attributed to Mr. Mulligan's actions. Although Mr. Chapman primarily reviewed the actions of Mr. Mulligan, he also opined Mr. Moffett's actions during the divorce proceedings met the required standard of care.
[¶39] Mr. Moffett designated Melissa Schwartz, an attorney who has acted as a fiduciary and represented fiduciaries for twenty years, as an expert. Ms. Schwartz opined that Mr. Moffett met the required standard of care while representing Mr. Wilkinson as conservator for Mr. Tozzi. She also opined that, because he met the standard of care, Mr. Moffett could not have caused an adverse outcome for Mr. Tozzi. In her report, she discussed each of the allegations made against Mr. Moffett and explained how he acted reasonably and met the standard of care in each instance.
[¶40] Through the expert reports and affidavits, Mr. Mulligan and Mr. Moffett carried their initial burden of proof, demonstrating through expert testimony that their conduct met the accepted standard of legal care, and if Mr. Tozzi had suffered damages, those damages were not caused by Mr. Mulligan or Mr. Moffett. Moore , 855 P.2d at 1248 ; Meyer , 889 P.2d at 516. Therefore, the burden shifted to Mr. Tozzi to demonstrate, through the use of expert testimony, that Mr. Mulligan's and Mr. Moffett's conduct did not meet the standard of care and that conduct caused Mr. Tozzi's damages. Moore , 855 P.2d at 1251. A review of Mr. Tozzi's expert reports shows he failed to carry his burden.
[¶41] Mr. Tozzi did not present any expert testimony that even alleged Mr. Mulligan's or Mr. Moffett's conduct was the cause of Mr. Tozzi's claimed damages. He relied solely upon the opinions of Mr. Bailey. While Mr. Bailey opined that Mr. Mulligan and Mr. Moffett breached the standard of care in many ways, he did not render any opinion that these actions resulted in damages. In his deposition, Mr. Bailey testified as follows regarding causation:
Q. (By [Mr. Moffett's counsel] ) Are you going to render any causation opinion in this case that had my client, Denny Moffett, done something different, it would have changed Judge Day's determination and changed the outcome of the case?
A. [ (Mr. Bailey) ] No.
Q. So no causation opinions at all.
A. I don't have anything to base it on.
Q. (By [Mr. Mulligan's counsel] ) I just have one more follow-up. Do you remember the questions and the answers about causation when he was asking whether you had any causation - -
A. [ (Mr. Bailey) ] Correct.
Q. - - based opinions that anything, whether anything that Mr. Moffett did would have made a difference, and you said no? My question, follow-up question, is are you of the same view with Mr. Mulligan?
A. I'm of the same view, because I don't know what the outcome was.
Q. And you cannot then say it would have been any different.
A. No.
[¶42] Mr. Tozzi tried to remedy the lack of causation evidence by submitting Mr. Bailey's affidavit that contained causation opinions. However, as discussed above, the court struck the affidavit because Mr. Tozzi failed to disclose those opinions by the court-imposed deadline in the scheduling order. This left Mr. Tozzi with the opinions, or lack thereof, contained in Mr. Bailey's report and deposition. Mr. Tozzi failed to establish a genuine issue of material fact existed regarding the elements of causation and damages, and Mr. Mulligan and Mr. Moffett were entitled to judgment as a matter of law. Moore , 855 P.2d at 1251 (the plaintiff's "failure to submit countervailing expert testimony established that no genuine issue of material fact existed and that summary judgment was appropriate.").
*766 Accountant Malpractice/Breach of Fiduciary Duty
[¶43] Mr. Tozzi brought a claim of accountant malpractice and a claim for breach of fiduciary duty against Mr. Wilkinson. In his complaint, he listed specific items of damages he claimed were caused by Mr. Wilkinson's actions. These claims fail for reasons similar to his claims for legal malpractice-he failed to present evidence that demonstrates there is a genuine issue of material fact with respect to his claimed damages.
[¶44] Mr. Wilkinson designated Michael Blackburn as an expert witness. In his report, Mr. Blackburn explained that Mr. Wilkinson's actions met the required standard of care, consequently making it impossible for Mr. Tozzi to have suffered the damages he claimed. Further, Mr. Wilkinson submitted the deposition testimony of Mr. Tozzi's fiduciary expert, Catherine Seal, which demonstrated Ms. Seal did not have an opinion on whether Mr. Tozzi suffered damages as a result of Mr. Wilkinson's actions:
Q. [ (By Mr. Wilkinson's counsel) ] I'm asking you as an expert whether you have an opinion as to whether he suffered any financial damages as a result of action by Jeff Wilkinson.
A. [ (By Ms. Seal) ] I haven't looked at the numbers to tell you that.
Q. Okay. As you sit here today, can you identify any damage in terms of dollars that John Tozzi suffered as a result of any action taken by Jeff Wilkinson?
A. No.
[¶45] Mr. Tozzi provided no countervailing expert testimony to dispute Mr. Blackburn's conclusions that Mr. Wilkinson acted reasonably and in accord with the recognized duty of care. He provided no evidence that Mr. Wilkinson's actions resulted in the damages Mr. Tozzi claims he suffered. Therefore, despite the many accusations Mr. Tozzi made against Mr. Wilkerson, he failed to demonstrate any issue of material fact for trial. Mr. Wilkinson was entitled to judgment as a matter of law.
CONCLUSION
[¶46] Mr. Tozzi accused three professionals of malpractice. The Appellees requested summary judgment and presented admissible evidence indicating they had complied with the applicable standards of care and had not caused any damage to Mr. Tozzi. In response, Mr. Tozzi produced no admissible evidence to support the elements of causation or damages in his claims of malpractice and breach of fiduciary duty. The district court properly entered summary judgment in favor of the Appellees on those claims.
[¶47] Mr. Tozzi also accused those professionals of conversion, alleging they claimed excessive fees and expenses from his conservatorship. Because the conservator court had already determined the fees were reasonable and appropriate and Mr. Tozzi did not appeal the court's decision, the doctrine of collateral estoppel precludes him from relitigating that issue in this proceeding. The district court properly granted summary judgment in favor of the Appellees on the conversion claim.
[¶48] Affirmed.

Mr. Tozzi argues the common sense exception to the expert witness requirement applies here. However, other than citing to Moore , 855 P.2d at 1249, for the proposition that a common sense exception exists, Mr. Tozzi has directed this Court to no authority, from Wyoming or otherwise, that would support his argument that the malfeasance he has alleged against the Appellees is within the common knowledge and understanding of a lay person, thereby negating the necessity of expert testimony. Without providing cogent legal analysis demonstrating expert testimony is unnecessary to prove Mr. Tozzi's claims, we decline to deviate from the general rule that expert testimony is necessary to demonstrate the standard of care and causation elements of a malpractice claim. Burnett , ¶ 7, 394 P.3d at 482.